United States Court of Appeals,

Fifth Circuit.

No. 93-8227.

Glenda DAVIS, Plaintiff-Appellant,

v.

CHEVRON U.S.A., INC., Defendant-Appellee.

Feb. 28, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*] District Judge.

PER CURIAM:

Plaintiff-Appellant Ms. Glenda Davis (Davis) sued Defendant-Appellee Chevron USA, Inc. (Chevron) under Title VII of the Civil Rights Act of 1964, alleging that Chevron failed to hire her because she is a woman. Chevron filed a motion for summary judgment, which the district court granted, finding that Davis had failed to state a prima facie case of *disparate treatment.* Davis appeals, and we affirm.

I

FACTS AND PROCEEDINGS

Responding to advertisements in the local papers, Davis applied to Chevron for a position as an oil refinery operator. The application process had two stages: an initial screening, which included a simple field test and an interview with only one person;

---

[*]District Judge of the District of Maryland, sitting by designation.

and follow-up interviews with two successive panels, each composed of two evaluators. Davis was one of 27 applicants who passed the initial screening, but she was not among the several who were ultimately offered a job. The day that she received Chevron's "rejection" letter, Davis concluded that she was a victim of gender discrimination in contravention of Title VII of the Civil Rights Act of 1964. After receiving a *no cause* determination from the Equal Employment Opportunity Commission, Davis initiated this lawsuit.

To support her claim of gender discrimination, Davis alleges that one of her interviewers—Mr. Jelercic—"stared at [her] from the neck down." She attaches significance to margin notes that he made on his written evaluation form: pink glasses, short brown hair, and lisp (or—as Chevron suggests—perhaps "limp"). She claims that Jelercic asked about her ability to supervise and resolve disputes with and among men. She also complains that he asked her a "no win" question: what made her "stand out" as a candidate. She states that Jelercic gave her "the lowest scores" of all her evaluators, and suggests that—taken together—these observations reveal a "sexist" attitude on the part of Jelercic. Davis contends that this sexism resulted in her not being offered the position of oil refinery operator.

Davis does not deny that the job of refinery operator is physically demanding. An operator must regularly climb ladders, open valves, use high-pressure fire hoses, and respond rapidly in emergencies. Neither does Davis deny that she has a history of

2

knee injuries. In 1983, Davis suffered a knee injury while working as a refinery operator at a Texaco facility and took medical retirement. Six years later, she went back to work, taking a job with Texacan; but within two years she suffered another on-the-job injury, damaging the same knee so severely that she needed knee replacement surgery. And although she claims that she would have become fit for duty within a "couple of months," Davis concedes that she was not physically qualified for the Chevron job at the time she applied.

During the application process, several evaluators expressed concerns about Davis' knee injury, her physical condition, and her record of work-related accidents. Ms. Carol Leverett (Leverett), the person who initially screened Davis, gave her a relatively low score in the category of safety attitude and record (a 5 out of 10) and noted Davis' knee injury on her evaluation form. In her affidavit, Leverett also voiced concerns about Davis' physical condition, noting that during the field test she was afraid that "[Davis] was going to hurt herself" and that "[Davis] climbed the ladder very slowly." True, Leverett passed Davis through the initial screening, but she gave Davis the lowest overall score (again, a 5 out of 10) of the interviewers whose evaluation forms are in the Record Excerpts provided by both parties.

Although Jelercic gave Davis a low score in the category of safety attitude and record (a 3 out of 10) and noted that he was "concerned about [Davis'] safety record," he gave her a fairly high score overall (a 7 out of 10). Wayne Nolde, another interviewer,

3

also gave Davis a relatively low score in the category of "safety attitude" and noted that Davis' "physical condition is questionable." Nolde reiterated this concern in his deposition, stating that Davis walks with a "distinct limp." Significantly, of the 27 applicants who passed the initial screening, Davis received the lowest average score in the category of safety attitude and record.

Chevron was also concerned about Davis' weight and her general physical condition. Davis is apparently somewhat heavy, and this may have heightened interviewers' concerns about her ability to meet the challenges of a physically demanding job, as well as her prospects of recovering from knee surgery.

Discovery proceeded to completion in this case, with only Chevron requesting written discovery. Although Davis targets Jelercic as the interviewer who evidenced gender bias, she chose not to depose him. After the close of discovery, Chevron filed a motion for summary judgment. The district court granted the motion, concluding that Davis had failed to make out a *prima facie* case of gender discrimination. Davis timely appealed.

II

STANDARD OF REVIEW

We review the district court's grant of summary judgment under the same standards that guided it.[1] We affirm a grant of summary judgment when no genuine issue of material fact exists and the

---

[1]*Walker v. Sears, Roebuck, & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

4

movant is entitled to judgment as a matter of law.[2] A dispute about a material fact is genuine if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."[3] When the record—taken as a whole—could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial.[4]

## III

## ANALYSIS

To defeat Chevron's Motion for Summary Judgment, Davis has to make a showing sufficient to establish the putative existence of every element that is essential to her case.[5] In other words, she must present a *prima facie* case. Otherwise, "there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[6] There are two methods of establishing a *prima facie* case of disparate

---

[2]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[4]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts").

[5]*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

[6]*Id.* at 323, 106 S.Ct. at 2552 (internal quotation marks omitted).

treatment under Title VII: *direct* and *indirect.*[7]  Davis' claim
fails under either approach.

A. *Direct Proof of Gender Discrimination*

Because direct evidence of employment discrimination is rare,
courts have devised *indirect* or *inferential* methods of proving such
discrimination.[8]  If there is direct evidence that an employer
placed substantial negative reliance on an illegitimate criterion
in reaching an employment decision, however, resort to *inferential*
methods of proof is unnecessary.[9]  Davis asserts that such direct
proof exists in this case.  We disagree.

As noted earlier, Davis alleges that one of her
interviewers—Jelercic—"stared at [her] from the neck down."  She
also points to marginal notes written by Jelercic on his evaluation
form to the effect that Davis wore "pink glasses," had "short brown
hair," and had a "lisp" (or perhaps a "limp").  Davis also suggests
that some of Jelercic's questions were inappropriate.  She claims
that he questioned her about her ability to supervise men, and that
he asked her what made her "stand out" as a candidate.  She

_____

[7]*See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 270-
72, 109 S.Ct. 1775, 1801-02, 104 L.Ed.2d 268 (1989) (O'Connor,
J., concurring); *Trans World Airlines, Inc. v. Thurston,* 469
U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (the
McDonnell Douglas-Burdine procedural minuet or indirect proof
method "is inapplicable where the plaintiff presents direct
evidence of discrimination").

[8]*See generally Texas Dep't of Community Affairs v. Burdine,*
450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell
Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973) (establishing the procedural "minuet" for indirect proof
of disparate treatment).

[9]*See supra* note 7.

states—erroneously—that Jelercic gave her "the lowest scores" of all her evaluators and suggests that all these observations—taken together—reveal his "sexism."  Davis contends that this sexism resulted in her being rejected for the position of oil refinery operator.  We find Davis' "direct evidence" unconvincing.

In *Brown v. East Mississippi Electric Power Ass'n,* we defined direct evidence in the employment discrimination context: "[d]irect evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."[10]  In that case we found that a supervisor's open and routine use of racial slurs "constitutes direct evidence that racial animus was a motivating factor ..." in employment decisions.[11]  Similarly, in *Price Waterhouse v. Hopkins,* the Supreme Court indicated the kind of comments that constitute direct evidence of gender discrimination.[12]  In that case, one partner referred to the plaintiff as "macho."[13]  Another suggested that she "overcompensated for being a woman."[14]  A third advised her to take "a course at charm school."  And a fourth advised her to "walk more femininely,

_____

[10]*Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993).

[11]*Id.*

[12]*Price Waterhouse v. Hopkins,* 490 U.S. 228, 235, 109 S.Ct. 1775, 1782, 104 L.Ed.2d 268 (1989).  In her concurring opinion, which was necessary to create a majority *ratio decidendi,* Justice O'Connor makes it clear that such comments constitute *direct evidence* of discrimination.  490 U.S. at 270-71, 109 S.Ct. at 1801-02.

[13]*Id.*

[14]*Id.*

7

talk more femininely, dress more femininely ... and wear jewelry."[15] Like the supervisor's comments in *Brown,* these comments directly suggest the existence of bias; no inference is necessary. In both cases, the offending comments cannot reasonably be interpreted as anything other than a reflection of bias (either racial or gender-based).

The "evidence" adduced by Davis is of an altogether different—and less compelling—character. Even after viewing this evidence in the light most favorable to Davis, as we must in reviewing a district court's grant of summary judgment, and even after giving Davis the benefit of all reasonable inferences, we are unpersuaded. As noted above, Davis attaches significance to the marginalia on Jelercic's evaluation form: pink glasses, short brown hair, and lisp or "limp." Davis fails to mention, however, that Jelercic also wrote "black shirt" at the same place on his form. She also omitted mention of the fact that these notations appear at the top of the evaluation form, right under the name of the applicant ("G. Davis"). But these additional facts that Davis omits help to reveal the true nature of the marginalia. As Chevron suggests, Jelercic doubtless made these notes to jog his memory, to allow him to recall—during the ensuing hiring decisions—which applicant went with which evaluation form (there were 27 applicants), to allow him to do his job. By presenting only some of the facts, Davis attempts to transform innocent mnemonic notes into an obsession with her appearance.

---

[15]*Id.*

8

Similarly, Davis attaches great significance to her assertion that Jelercic "stared at [her] from the neck down," while simultaneously de-emphasizing her pronounced limp, her generally poor physical condition, her heaviness, and her recent surgery (which was on her knee and therefore "below her neck"). All of these conditions were noted by her interviewers, and any of them explains an interviewer's interest in surveying her "from the neck down" to glean her fitness for a physically-demanding job.

Intent on making Jelercic appear sexist, Davis incorrectly states that he "gave her the lowest scores, including a three (out of 10) on safety attitude/record." Generally speaking, however, Jelercic did not give Davis low scores. Of the three interviewers whose evaluation forms are provided in Appellee's Record Excerpts, Ms. Leverett—the only woman who reviewed Davis' application—gave her the lowest overall score (a 5 out of 10). Jelercic generally gave Davis fairly high scores. He did give her a relatively low score in the category of safety attitude and record (3 of 10), but so did everyone else. He also forthrightly noted his concerns at the bottom of his evaluation form: "concerned about safety record." This concern was clearly shared by other interviewers, for Davis received the lowest average safety score of all 27 applicants—a mathematical fact that reflects a real consensus among her interviewers.

Finally, Davis avers that Jelercic asked her sexist questions. He allegedly asked her "what would make her stand out from other applicants." But we perceive this to be a perfectly appropriate

9

question. Indeed, it is the key question in essentially every application process: what distinguishes a particular applicant from other applicants (in this case, 26 other applicants).

Only slightly more problematic is Jelercic's alleged question concerning Davis' ability to supervise and handle disputes with and among men. This is the sole item of direct evidence that even remotely raises the specter of gender consciousness. But we certainly cannot say that, standing alone, this question indicates gender animus. Indeed, as most of Davis' coworkers would have been men, it was important for Chevron to know that she had no such animus towards—or discomfort with—men.

Davis fails to adduce any significant direct evidence of gender bias. A rational trier of fact might conclude that Davis' allegations present a scintilla of evidence, but a mere scintilla is not enough to defeat a motion for summary judgment.[16] Additionally, all of Davis' allegations are directed at one person: Jelercic. Yet Jelercic was but one of seven persons involved in the decision not to hire Davis, and Davis does not explain how Jelercic's alleged gender bias could have produced the unanimous decision not to hire her; she simply points to the fact of her rejection. In conclusion, Davis' *direct evidence* is simply too weak to defeat Chevron's Motion for Summary Judgment: it is not even suggestive. Even if believed, it fails to prove that Chevron's hiring process was infected with gender bias, as is

---

[16]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

10

required by *Brown.*[17]

B. *Inferential Proof of Gender Discrimination*

Davis also attempts to prove gender bias by resorting to the inferential proof process established in *McDonnell Douglas v. Green* and *Texas Department of Community Affairs v. Burdine.*[18]  The three-step McDonnell Douglas-Burdine "minuet" structures the process of proving disparate treatment *inferentially,* rather than directly.[19]  Those three steps are:  (1) The plaintiff must prove—by a preponderance of the evidence—a prima facie case of disparate treatment;  (2) if the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision, and (3) if that is done, the plaintiff may attempt to demonstrate that the defendant's proffered explanation is pretextual.[20]  At the end of the day, however, the plaintiff has the burden of proving that a violation of Title VII occurred.  *See St. Mary's Honor Center v. Hicks,* 509 U.S. ----, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).  In this case, Davis attempts to skip directly to step three—rebutting Chevron's proffered explanation—without ever having completed step 1—proving her prima facie case.

---

[17]*Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993).

[18]*McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

[19]*Burdine,* 450 U.S. at 252-53, 101 S.Ct. at 1093-94.

[20]*Id.* at 253, 101 S.Ct. at 1094.

11

To establish her prima facie case of gender discrimination, Davis must show that (1) she is a member of a protected group; (2) she applied for a position as an oil refinery operator; (3) she was qualified for that position when she applied; (4) she was not selected for the position; and (5) after Chevron declined to hire her the position either remained open or a male was selected to fill it.[21] We agree with the district court that "in this case, the issue on summary judgment is the third element, to-wit: whether the Plaintiff was qualified for the position of refinery operator" when she applied.

Davis was clearly *not* qualified to be a refinery operator *at the time* she applied for that position on October 31, 1991. As the district court pointed out, Davis admits in her own affidavit that she was not "fit for duty" when she interviewed with Chevron. Despite her chronic knee problems and her recent surgery, Davis asserts that she would have become fit for duty in the ensuing few months. But this assertion is both irrelevant and speculative. She was not qualified for the position *at the time she applied,* and Chevron was not required to be as sanguine about the prospects of her recovery as Davis purports to have been. Indeed, in view of the chronic quality of her knee problems to date, and in view of the demands of the job position for which she applied, some skepticism was warranted. Chevron was perfectly free to insist that Davis demonstrate her fitness for duty before it made her a

---

[21]*See, e.g., Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1135 (5th Cir.1983) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

12

job offer.

As Davis was not physically qualified to be a refinery operator *at the time* she applied for that position, she is unable to make out a prima facie case of gender discrimination under the McDonnell Douglas-Burdine paradigm. Moreover, even assuming *arguendo* that Davis does make out a prima facie case of gender discrimination, she does not automatically defeat Chevron's motion for summary judgment: she must also prove that Chevron's alleged failure to hire her because of her poor health and safety record is pretextual.[22]

To justify its decision not to hire Davis, Chevron points to Davis' uniformly poor evaluations in the category of safety attitude and record, and to her "unsatisfactory" physical condition. Support for this explanation is abundant: Chevron's affidavits and contemporaneous evaluation forms are replete with references to Davis' bad knee and poor safety record. As Chevron has articulated a legitimate reason for not hiring Davis and supported its summary judgment motion with sufficient evidence, the burden shifts to Davis to show that Chevron's proffered explanation was pretextual.[23] To meet that burden, Davis attempts to refute Chevron's articulated explanation with naked assertions. But a plaintiff's defense against a summary judgment motion must consist of "more than a mere refutation of the employer's legitimate

---

[22]*See Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir.1993) (ADEA case); *see also Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

[23]*Id.*

13

nondiscriminatory reason [for not hiring the plaintiff]."[24]  And in this case, Davis' arguments do not even rise to the level of a "mere refutation."

## IV

## CONCLUSION

None of Davis' arguments demonstrates that a genuine issue of material fact exists in this case.  Even giving her the benefit of all reasonable inferences, and even assuming the truth of all her alleged facts, Davis fails to establish a prima facie case of gender discrimination through *direct* evidence.  Neither does she establish one *inferentially.*  As Davis concedes that she was not physically fit for the job at the time she applied for it and was rejected, she *cannot* establish a prima facie case under *Burdine* and its progeny.  That is the show-stopper in this disparate treatment gender discrimination case.  Additionally, Davis fails to prove that Chevron's proffered concerns about her poor safety record and unsatisfactory physical condition are pretextual.  As we conclude that a rational trier of fact could not reasonably find for Davis, Chevron is entitled to summary judgment, and the judgment of the district court is

AFFIRMED.

---

[24]*Id.*