Carol George **JOHNSON** and
Tracy P. Falgoust

v.

**FLEET MORTGAGE CORP.**
**and Patrick P. Gillock.**

Civ. A. No. 93–1473.

United States District Court,
E.D. Louisiana.

March 6, 1995.

Ronald Lawrence Wilson, Ronald L. Wilson, Attorney at Law, New Orleans, LA, for plaintiffs.

Amelia Williams Koch, Phyllis Renee Guin, Locke, Purnell, Rain & Harrell, P.C., New Orleans, LA, for defendants.

### ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a "Motion for Summary Judgment by Defendants, Fleet

Mortgage Corp. and Patrick Gillock," which was taken under submission on an earlier date without oral argument. Having reviewed the memoranda of the parties, the record, and the applicable law, the motion for summary judgment is DENIED.

### Background

Plaintiffs are former employees of Fleet Mortgage who were terminated from their employment in early 1993. Their supervisor was the individual defendant Gillock. In her lawsuit, plaintiff Carol George Johnson claimed discrimination arising from racial harassment, termination and retaliation. Plaintiff Falgoust claimed discrimination based on race and ethnic origin and retaliatory discharge due to her friendship with Johnson. Both plaintiffs alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and Louisiana's anti-discrimination statutes, LSA–R.S. 23:1006 and 51:2231. Plaintiffs also alleged claims under theories of intentional infliction of emotional distress, violations of the Fair Housing Act and unequal pay. (R.Doc. 1.)

Prior to reallotment of this case to this section, the previous judge granted partial summary judgment as to the latter three causes of action on September 29, 1993. (R.Doc. 11.)

Plaintiffs since amended their claims, including amendments involving Title VII and § 1981 claims as well as the state-law claims of discrimination and negligence (R.Doc. 15). Defendants answered and filed a counterclaim against plaintiff Carol George Johnson alleging fraud and breach of fiduciary duty. (R.Doc. 17.) In response, Ms. Johnson filed a counterclaim of defamation. (R.Doc. 24.)[1]

Defendants seek summary judgment on plaintiffs' employment discrimination claims. Defendants contend that neither plaintiff can establish a *prima facie* case of discrimination. Alternatively, even if either plaintiff can set forth a *prima facie* case, defendants had legitimate, non-discriminatory reasons for firing plaintiffs.

In response both plaintiffs rely principally on the affidavit of plaintiff Johnson to establish a genuine issue of material fact as to their claims. Specifically, both point to Johnson's sworn statement that defendant Gillock told her that she was "hiring too many people of the same skin complexion. He instructed me to terminate Tracy Falgoust, because he did not like her looks; Tracy Falgoust is Phillipino–American (sic)." (Johnson affidavit, Exh. 2, plaintiffs' memorandum in opposition, R.Doc. 30.) Johnson also contends that there are several other facts, as set forth in her affidavit, that preclude summary judgment.

### Law and Application

#### A. Summary Judgment

■ Summary judgment is appropriate only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1084 (5th Cir.1994).

> A dispute about a material fact is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." When the record—taken as a whole—could not lead a rational trier of fact to find for the nonmoving party, then there is no issue for trial.

*Id.* (Footnotes omitted.)

In making this determination, the Court draws all justifiable inferences in favor of plaintiffs, the nonmovants. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

#### B. General Principles of Discrimination Law

■ Both 42 U.S.C. § 2000e–2 and 42 U.S.C. § 1981 prohibit discrimination on the basis of race and/or national origin. Section 2000e–2 specifically prohibits such discrimination. The Supreme Court has construed § 1981 to forbid discrimination in the making of contracts on the basis of race, ancestry or ethnic characteristics. *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 613, 107 S.Ct.

---

1. Despite the styling of this motion as one for summary judgment, the defamation counterclaim of plaintiff Johnson was not addressed in this motion. Therefore, this motion is, in effect, a motion for partial summary judgment.

2022, 2026, 2028, 95 L.Ed.2d 582 (1987). The Louisiana statutes also specifically prohibit racial or ethnic discrimination.

In order for a plaintiff who claims discrimination under Title VII to defeat a motion for summary judgment, the plaintiff must "make a showing sufficient to establish the putative existence of every element that is essential" to his or her case. *Davis,* 14 F.3d at 1084–85. In order to make this showing, a plaintiff must "present a *prima facie* case." *Id.* at 1085. A plaintiff may establish this through direct or indirect, *i.e.,* inferential, evidence. *Id.*

■ Direct evidence of racial discrimination is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. *Brown v. East Mississippi Electric Power Association,* 989 F.2d 858, 861 (5th Cir.1993).

> When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.
>
> *Id.*

If a plaintiff attempts to prove discrimination inferentially, then she must follow a three-step procedure:

> (1) The plaintiff must prove—by a preponderance of the evidence—a prima facie case of disparate treatment; (2) if the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision, and (3) if that is done, the plaintiff may attempt to demonstrate that the defendant's proferred explanation is pretextual.
>
> *Davis,* 14 F.3d at 1087.

■ A prima facie case of employment discrimination exists if plaintiff can show that she is a member of a protected group, that she is qualified for the job she held, that she was discharged and that, after she was discharged, her position was filled with a person who was not a member of a protected group. *Id.*

However, the Fifth Circuit has stated that the last factor is not set in stone. "The focus of the inquiry may not be obscured by the blindered recitation of a litany." *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 86 (5th Cir.1982).

> The aim ... is to identify "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" On [a] motion for summary judgment the district court should have scrutinized the evidentiary offerings for indicia of racial prejudice at work in [ ] discharge.
>
> *Id.* See also *Jatoi v. Hurst–Euless–Bedford Hospital Authority,* 807 F.2d 1214, 1219, *modified on rehearing,* 819 F.2d 545 (5th Cir.1987) (applying the *Byrd* focus in a claim under 42 U.S.C. § 1981).

■ The Fifth Circuit also has stated in the context of an age discrimination case, to which the same standards apply as in Title VII cases, that for a plaintiff to avoid summary judgment, he must produce sufficient evidence that would show that a defendant's proffered reasons for termination are a pretext for discrimination. *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957–58 and n. 4 (5th Cir.1993).

■ In the context of a retaliatory discharge claim, a plaintiff must show that she was engaged in an activity protected by the Title VII, that an adverse employment action occurred and that there was a causal connection between the participation in the protected activity and the adverse employment action. *See Barrow v. New Orleans Steamship Association,* 10 F.3d 292, 298 (5th Cir.1994).

■ Claims under § 1981 are governed by the same procedures and "scheme of proof" as Title VII claims. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1988); *Jatoi, supra.* Similarly, Louisiana courts have looked to Title VII and jurisprudence construing Title VII in determining whether a plaintiff has stated a cause of action under

state law. *Bustamento v. Tucker,* 607 So.2d 532, 539, n. 9 (La.1992).

### C. Tracy Falgoust's claims

■ Falgoust's supplemental and amended complaint states that she was terminated due to her ethnic origin, her non-caucasian features and her relationship with plaintiff Johnson. (Paragraph 36, R.Doc. 15.) Defendants' initial argument is that plaintiff cannot prove a *prima facie* case.

As noted, Falgoust relies in her opposition principally on the affidavit of her co-plaintiff that Gillock told Johnson to terminate Falgoust due to her "looks" and that Johnson was hiring too many employees of the same skin complexion. The Court finds this alleged statement to be evidence of direct discrimination that supports a finding of a *prima facie* case. These are statements which can be construed to be based on race and/or national origin that preclude summary judgment. They are easily distinguishable from neutral statements such as those delineated in *Davis,* 14 F.3d at 1086, and more akin to the direct racial slurs in *Brown,* 989 F.2d at 861–62.

Defendants also argue that plaintiff cannot prove her case inferentially. Defendants contend that plaintiff was replaced by a member of a protected class, according to an affidavit from defendant Gillock that states that Falgoust was replaced with an African–American woman who still holds the job. (Gillock Affidavit, paragraph 27, Exh. A to defendants' memorandum, R.Doc. 25.) Thus, according to defendants, Falgoust cannot establish this aspect of her *prima facie* case.

However, as *Byrd* instructs, this Court cannot review the facts of this case wearing blinders. Falgoust relies in large on the affidavit of her co-plaintiff that Johnson was told to fire plaintiff due to her "looks." With this in mind, the Court finds that summary judgment is inappropriate under *Byrd* even though an African–American woman replaced Falgoust. Johnson's affidavit is "indicia of racial prejudice at work [ ] in discharge." *Byrd,* 687 F.2d at 86.

Defendants also contend that there is a question as to whether Falgoust is even a member of a protected class. According to her deposition, she "believed" that her mother's parents were from the Philippines. (Exh. I to defendants' memorandum in support of their motion, pp. 92–94, R.Doc. 25.) However, the fact that this is a "question," especially in view of Gillock's alleged statement to Johnson, shows that summary judgment is inappropriate.

The defendants also argue that Falgoust was terminated because of her poor performance and that he did not even know of her Philippine heritage. (Gillock Affidavit, paragraph 21.) However, Johnson's affidavit relative to Gillock's alleged statement to fire Falgoust creates a genuine issue of material fact for a jury to decide whether defendants' proffered reasons for termination were a pretext.

■ In regard to Falgoust's retaliation claim, plaintiff claims that she was retaliated against when she refused to give answers during an interview that would incriminate plaintiff Johnson. (Plaintiffs' supplemental and amending complaint, paragraph 31, R.Doc. 15.) Defendants argue that they are entitled to summary judgment based on the Gillock's affidavit that his decision to terminate Falgoust had been made before this interview and, thus, any answers to those questions were irrelevant to her termination. (Gillock Affidavit, paragraph 21.)

In her affidavit filed in support of her opposition to summary judgment, Falgoust states that shortly after co-plaintiff Johnson was terminated, Gillock attempted to get Falgoust to "accuse Carol [Johnson] of certain improprieties, seeking to obtain my cooperation in his scheme to terminate her, because of her race. When I refused to do so, he terminated me." (Falgoust Affidavit, Exh. 1, paragraph 10, plaintiffs' memorandum in opposition, R.Doc. 30.) Reviewing this affidavit in the light most favorable to Falgoust, the Court finds that there is a genuine issue of material fact as to whether Gillock fired plaintiff for not participating in a "scheme" to terminate Johnson because of

race.[2] *See Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir.1994) (requiring an employee to discriminate against blacks is itself unlawful under Title VII). Even though Johnson had already been terminated, the obvious inference is that Gillock was attempting after the fact to find non-discriminatory reasons to support his firing of Johnson. Whether Falgoust's refusal caused Gillock to fire Falgoust is a question for the jury to decide.

### D. Carol Johnson's claims

▇ In regard to Johnson's claims, Gillock's alleged statement to Johnson that she was hiring too many people of "the same skin complexion" can be construed as direct evidence of discrimination in regard to Johnson also. Therefore, summary judgment is inappropriate.

Even if Johnson was limited to proving her case inferentially, however, there are genuine issues of material fact such that summary judgment should be denied.

Defendants first argue that Johnson was replaced by a woman (Gillock Affidavit, paragraph 27), so she cannot make a *prima facie* case of gender discrimination. However, the same paragraph of Gillock's affidavit indicates that Johnson was replaced by a Caucasian woman, so she can establish a *prima facie* case of racial discrimination. Further, as will be shown, the Court finds there are genuine issues of material fact as to whether "indicia of racial prejudice" were at work in Johnson's termination. *Byrd, supra.*

▇ Defendants also argue that Johnson cannot establish a *prima facie* because she cannot show that she was qualified. However, this argument is undercut by the showing that Gillock promoted her to the position of Branch Manager. (Gillock Affidavit, paragraph 3.)

The bulk of defendants' argument is basically that their proffered reasons for terminating Johnson are non-discriminatory. Specifically, defendants argue that Johnson failed to make certain improvements according to an audit that had been done prior to her being promoted and of which she was told by Gillock. Further, the improvements still had not been made after one "practice" audit and one "true" audit. Additionally, Gillock told Johnson that she was terminated for failing to follow Fleet Mortgage's policies and procedures. (See generally paragraphs 6–20 Gillock's Affidavit.)

Because Johnson's proof is inferential, she must show that these proferred reasons are pretextual. The Court finds that an inference can be drawn from Gillock's alleged statement that Johnson was hiring too many people of the "same skin complexion" that Gillock's actions in terminating Johnson were not legitimate but race-based and pretextual.

Defendants argue that the racial make-up of the office remained proportionate both before and after termination.[3] However, the Court refuses to grant summary judgment on the basis of ratios in light of the facts before it.

Similarly, the Court rejects defendants' other arguments in light of Johnson's affidavit. For example, defendants's argument that the "true" audit resulted in an unsatisfactory rating of the branch office, which resulted in Johnson's termination, is met by Johnson with a statement that another manager in another branch received an "unsatisfactory" rating after an initial audit but was not terminated. (Johnson Affidavit, paragraph 8.)

▇ Finally, defendants argue that because Gillock both hired and fired Johnson, an inference arises that race was not a motivating factor in her dismissal, citing *Mitchell v. Data General Corp.,* 12 F.3d 1310 (4th Cir.1993). *Mitchell* was an age discrimination case where the court held that an inference of non-discrimination arises when a supervisor who had selected the plaintiff to fill a position was the same supervisor who in-

---

**2.** As the Court will show, there are genuine issues as to whether Johnson's firing was based on race.

**3.** According to Gillock's affidavit, there were 20 employees, eight African–American and 12 Caucasian, before Johnson's firing and total of 14 employees, five African–American and nine Caucasian, after the termination. (Gillock's Affidavit, paragraph 19.)

cluded plaintiff on a list of those subject to a reduction-in-force. *Id.* at 1318. The inference arises because it would be irrational, under those circumstances, for there to be discriminatory intent. *Id.*

The Court finds that *Mitchell* is factually inapposite in view of Gillock's alleged statement to Johnson *after* hiring her that Johnson was hiring too many people of the same skin color. As the Court has found, this can be construed as direct evidence of racial discrimination. At the least, an inference of racial motivation can be drawn from this statement with respect to Johnson's claims that equalizes, if not negates, any inference of non-discrimination under *Mitchell.*

### Conclusion

Because there are genuine issues of material fact with respect to both plaintiffs' claims, defendants' motion should be denied.

Accordingly,

**IT IS ORDERED** that the "Motion for Summary Judgment by Defendants, Fleet Mortgage Corp. and Patrick Gillock" **BE** and **IS HEREBY DENIED.**