64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Virgil IVERY, Plaintiff-Appellant,
v.
McDONNELL DOUGLAS CORPORATION, Defendant - Appellee.
 No. 94-55694.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 11, 1995.*
Decided Aug. 15, 1995.
 
 Before: THOMPSON, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * Virgil Ivery appeals the district court's grant of summary judgment in favor of his employer, McDonnell Douglas Corporation. Ivery alleged McDonnell Douglas discriminated against him by terminating him from his employment based on his African-American race in violation of Title VII, 42 U.S.C. Sec. 2000e et seq., and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code Sec. 12940 et seq. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 II
 
 3
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). In reviewing the decision of the district court, we may affirm on any ground supported by the record. United States v. Washington, 969 F.2d 752, 755 (9th Cir. 1992), cert. denied, 113 S. Ct. 1945 (1993).
 
 
 4
 Ivery's primary contention on appeal is that the district court erred in the formulation of its analysis of Ivery's Title VII discrimination claim at the summary judgment stage. Ivery argues the district court erroneously required Ivery to produce some direct evidence of intentional discrimination by McDonnell Douglas in order to raise a genuine issue of triable fact as to whether the legitimate nondiscriminatory reason for Ivery's termination offered by McDonnell Douglas was pretextual. In addition, Ivery contends the district court erred in depriving him of his right to prove pretext with the same circumstantial evidence used to establish the prima facie case of discrimination.
 
 
 5
 The correct analysis of Title VII discrimination claims has been clearly articulated in this circuit.
 
 
 6
 [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 7
 Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (quoting Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1985), as amended, 784 F.2d 1407 (1986)). When determining whether a plaintiff has raised a genuine issue of fact as to whether an employer's legitimate nondiscriminatory reasons were pretextual
 
 
 8
 the district court must look at the evidence supporting the prima facie case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons. And, in those cases where the prima facie consists of no more than the minimum necessary to create a presumption of discrimination under Mcdonnell Douglas, plaintiff has failed to raise a triable issue of material fact.
 
 
 9
 Id. In those cases "the plaintiff must produce 'specific, substantial, evidence of pretext."' Id. (quoting Steckl v. Motorola, INC., 703 F.2d 392, 393 (9th Cir. 1983)). An employee can demonstrate that an employer's proffered reason for its decision is pretext "either directly by persuading the court that the discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).
 
 
 10
 In granting summary judgment in favor of McDonnell Douglas, the district court stated: "Mr. Ivery has presented no evidence that the justification for his termination was pretextual. He has presented no evidence that the individuals responsible for his termination did not believe in good faith that he had been sleeping on the job intentionally." The record firmly supports the district court's conclusion.
 
 
 11
 Specifically, Ivery directs this court's attention to six pieces of evidence which he contends creates a genuine issue of material fact as to whether McDonnell Douglas's reason for terminating Ivery was pretextual.
 
 
 12
 First, Ivery points to the deposition of James Crane, Ivery's supervisor, in which Crane stated he warned Ivery: "Stay away from Doris. She is trouble." Ivery contends this is circumstantial evidence suggesting that Black employees were not allowed to associate together without the threat of losing their jobs. We are not persuaded that this constitutes circumstantial evidence of discrimination. Later in his deposition, Crane explained that he had been receiving reports from other supervisors that Ivery and Doris had been seen together quite a few times in areas of the plant where they should not have been. Crane further explained that because Doris and Ivery worked in different departments and because Doris was not Ivery's union representative, there was no job-related reason for them to be together during working hours.
 
 
 13
 Second, Ivery relies on four memoranda relating to instances where non-black employees had not been fired for sleeping on the job. Citation to four specific examples of employees who were not fired for sleeping on the job is insufficient to controvert McDonnell Douglas's evidence that: 1) fifteen employee's in Ivery's bargaining unit had been laid off for sleeping on the job from 1991 through 1993, of whom nine were White and two were Black; 2) Ivery is the only employee in his department to have been laid off for sleeping in the job since 1990; 3) thirty-five employees in Ivery's bargaining unit were involuntarily terminated from 1991 through 1993, of which twenty-three were White and four were Black; and 4) from 1991 through 1993, Ivery's bargaining unit was composed of between 10% and 14% Blacks.
 
 
 14
 Third, Ivery relies on Crane's statement that "he never saw Virgil's eyes closed nor did he touch Virgil to wake him up ... [and] that he only assumed Virgil and the other employee were asleep." This evidence, however, does not suggest that McDonnell Douglas's explanation that Ivery was terminated for sleeping on the job was pretextual, but rather, that persons responsible for terminating Ivery may have been mistaken in their belief that he was sleeping on the job. The district court correctly noted that whether or not Crane was correct in his belief that Ivery was sleeping is irrelevant in determining whether McDonnell Douglas's reason for terminating Ivery was pretextual. See Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993) (plaintiff must raise a "genuine issue as to whether the employer's explanation for its action is true"). The only issues are whether Crane believed that Ivery was asleep and whether that was the real reason for his termination.
 
 
 15
 Fourth, Ivery contends that his assertions in his affidavit to the EEOC, if proven true, would be sufficient to create a genuine issue of material fact as to whether he was unlawfully discriminated against based on race. Ivery's affidavit, however, amounts to nothing more than unsubstantiated allegations that he was terminated because of race. This is not the "specific, substantial, evidence of pretext" which a plaintiff must produce in order to survive summary judgment. A plaintiff must present more than mere naked assertions in order to refute an employer's legitimate nondiscriminatory reason for terminating its employee. Wallis, 26 F.3d at 890 (citing Davis v. Chevron U.S.A., 14 F.3d 1082, 1087 (5th Cir. 1994)).
 
 
 16
 Fifth, Ivery relies on the affidavit of coworker Vincent Bellone. Bellone alleged various racial incidents which occurred between 1978 and 1980, the time during which Bellone worked with Ivery. Ivery fails to explain the relevance of the incidents alleged in Bellone's affidavit to Ivery's termination in 1992 for sleeping on the job. The district court correctly concluded that this evidence did not raise a genuine issue of material fact as to whether Ivery's discharge was based on race.
 
 
 17
 Sixth, Ivery contends the affidavit of Doris Durousseau-Neal raises a genuine issue of fact of racial discrimination. The affidavit alleged that Ivery was not sleeping when Crane found him in the janitor's closet and that he had made complaints about racial discrimination at McDonnell Douglas over the past two years. As already discussed, whether Ivery was, in fact, asleep is irrelevant in determining whether the reason offered by McDonnell Douglas for his termination was pretextual. Furthermore, Ivery presented no evidence to the district court establishing a connection between any complaints about racial discrimination which he may have made and the decision to terminate him.
 
 
 18
 Ivery also contends that he should have been allowed to show pretext with the same circumstantial evidence used to create the McDonnell Douglas presumption is without merit. This court has clearly stated that where, as in the instant case, "the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Id.
 
 
 19
 We conclude Ivery has failed to establish the existence of a genuine issue of material fact as to whether the legitimate nondiscriminatory reason for Ivery's termination offered by McDonnell Douglas was pretextual. Because we hold Ivery presented no evidence of pretext, we do not address Ivery's argument that the district court erred in stating that even if Ivery had presented evidence of pretext, he failed to present any evidence that his termination was motivated by race.
 
 
 20
 Finally, Ivery contends for the first time in his reply brief that the district court erred in holding that his claims of dental opportunities in hiring, promotion, and job assignments, hostile work environment, and retaliatory termination were outside the scope of his EEOC complaint, and therefore, he was barred from raising them in a civil suit. Because Ivery failed to raise these issues in his opening brief, they are waived and we decline to consider them. Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir. 1990).
 
 
 21
 The order of the district court granting summary judgment in favor of McDonnell Douglas is
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36.3