IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-11376
Summary Calender
_____


SHAWN GODWIN

                                        Plaintiff-Appellant

v.

PIER 1 IMPORTS (US), INC

                                        Defendant-Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 4:98-CV-60-Y
_____

July 12, 2000

Before KING, Chief Judge, and JONES and DeMOSS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Shawn Godwin ("Godwin") appeals the

district court's grant of summary judgment in favor of Defendant-

Appellee Pier 1 Imports (U.S.), Inc. ("Pier 1").  We AFFIRM.


                              I.

    Godwin, an African-American male, is a former employee of

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Pier 1.  Godwin was first employed by Pier 1 in 1989 as a receiving clerk.  By 1995, after a series of promotions and raises, Godwin was the Lead Copy Center Technician at Pier 1's home office in Fort Worth, Texas.  In September 1995, Godwin suffered an on-the-job injury that strained his back and broke his right hand.

Godwin's injuries prevented him from immediately returning to work and, pursuant to the Family and Medical Leave Act ("FMLA"), Pier 1 placed Godwin on job-protected medical leave.  Godwin's twelve weeks of job-protected leave under the FMLA expired on December 14, 1995.  Under Pier 1's medical leave policy, however, an employee could take up to an additional six months of medical leave after the expiration of his FMLA job-protected leave.  During this additional leave, however, the employee's job is not protected.  If Pier 1 fills the employee's job during this time, the employee may attempt to find another position within Pier 1 for which he is qualified.  If an employee does not return to work within the six months he is administratively terminated.

Despite the fact that Godwin's job-protected leave expired in December 1995, Pier 1 kept Godwin's position open for several weeks.  In early February 1996, Pier 1 learned that Godwin still had not been released by his physician to return to work and that it was uncertain when Godwin would be able to return.  Therefore, Pier 1 took steps to fill the Lead Copy Center Technician

2

position.  On February 12, 1996, a Copy Center Technician, Kyle DeGroat ("DeGroat"), was promoted to Lead Copy Center Technician. The position vacated by DeGroat was filled the same day by the Lead Mail Room Attendant, Gary Whalen ("Whalen").  On February 27, 1996, Whalen's vacated position was filled by Eddie Solis, a Pier 1 employee in the payroll department.

In March 1996, Godwin was issued a limited release by his physician.  This release allowed Godwin to return to work, but it substantially limited what type of work Godwin could perform. Godwin then interviewed for a position with Pier 1 as a Sample Room Clerk, but withdrew himself from consideration because he felt he could not perform the required tasks under his current physical restrictions.  On April 22, 1996, Godwin was released by his physician to return to work with no restrictions.  Godwin, however, never contacted Pier 1 requesting to return to work or inquiring as to available positions.  Having exhausted his six months of additional leave without returning to work, Godwin was administratively terminated on June 21, 1996.[1]

Godwin believes that Pier 1 illegally discriminated against him due to his race.  After exhausting his administrative remedies, Godwin filed suit in the United States District Court

---

[1] Godwin belatedly submitted an application for employment to Pier 1 on September 10, 1996.  Although Pier 1 offered Godwin a job as a Mailroom Attendant, at the same rate of pay and benefits he enjoyed before his injury, Godwin rejected the offer.

for the Northern District of Texas alleging that Pier 1 had violated Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. §§ 2000e-2000e-17.  Specifically, Godwin's complaint alleged that Pier 1 had discriminated against him by filling his position with another employee and denying him any other position in the company, thus preventing him from returning to work. Godwin also alleged that one of his supervisors, Mel Hasty ("Hasty"), had made disparaging remarks about minorities and that these remarks indicated that Pier 1 had engaged in intentional discrimination.

Pier 1 moved for summary judgment.  After examining the record and the parties' briefs, the district court determined that Godwin had failed to establish a prima facie case of intentional discrimination because, at the time of the employment actions Godwin complained of, he was physically unable to return to work.  As a result, Godwin could not show that he was qualified for the positions.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1087 (5th Cir. 1994).  The district court entered judgment in favor of Pier 1 and dismissed Godwin's complaint without prejudice.  Godwin timely appeals.


II.

This court reviews a grant of summary judgment de novo, applying the same standards as the court below.  See Matagorda

4

County v. Law, 19 F.3d 215, 217 (5th Cir. 1994). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could find in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Godwin initially argues that the district court erred in granting summary judgment because he had presented direct evidence, in the form of statements allegedly made by Hasty, of unlawful employment discrimination by Pier 1. According to Goodwin, Hasty told another employee that he did not want Godwin back and that he did not want to hire any more "blacks" because "those people file workers' compensation claims." Hasty allegedly went on to say that Godwin was "a prime example of that." Godwin concludes that these comments, coupled with Pier 1's failure to hold open his position, raise genuine issues of material fact regarding unlawful discrimination.[2] We are

---

[2] Pier 1 halfheartedly attempts to argue that Godwin waived any argument regarding this issue because he failed to make such an argument in opposition to Pier 1's motion for summary judgment. Godwin's response to Pier 1's motion for summary judgment, however, specifically mentions Hasty's derogatory comments. Additionally, in his brief accompanying that response, Godwin argues that Hasty's comments, combined with other evidence, shows that he was discriminated against. As a result, Godwin did not waive appellate consideration of whether Hasty's

5

unpersuaded that these comments, if made, are sufficient to support a claim of unlawful employment discrimination.

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993) (citations omitted). In Boyd v. State Farm Ins. Cos., 158 F.3d 326, 330 (5th Cir. 1998), we stated that a Title VII plaintiff must show a causal connection between the allegedly discriminatory remarks and the adverse employment action. Godwin has failed to show any connection between Hasty's statements and Pier 1's failure to hold his job open until he returned to work. To the contrary, the evidence shows that Hasty and Pier 1 made every effort to keep Godwin's position open for him, including keeping the position available for nearly two months after Godwin's FMLA job-protected leave expired.

In addition, pursuant to his doctors orders, Godwin could not return to light duty work until March 1996, and he was not fully released to work until late April 1996. The employment actions that Godwin complains of all took place before he was given a doctor's release to do light duty work. Setting aside the fact that Godwin failed to demonstrate a causal connection between Hasty's remarks and the alleged employment

remarks constitute direct evidence of unlawful discrimination.

discrimination, we fail to see how any of Hasty's personal biases could have prevented Godwin from returning to work when his medical orders prevented him from doing so.

Finding that Godwin has failed to present any direct evidence of discrimination, we look to see whether he has presented evidence creating an inference of intentional discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To create an inference of intentional discrimination, a plaintiff must first establish a prima facie case by showing that: (1) he is a member of a protected class; (2) he sought and was qualified for an available employment position; (3) he was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications to fill the position. See McDonnell Douglas, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the employer to show that the challenged employment action was taken for legitimate, nondiscriminatory reasons. See id. If the employer proffers such reasons, the burden returns to the plaintiff to show that the proffered reasons are mere pretext for unlawful discrimination. See id. at 804.

We agree with the district court that Godwin has failed to establish a prima facie case. Specifically, Godwin has failed to show that he sought and was qualified for an available position. We note that the challenged employment action -- the filling of

7

the Lead Copy Center Technician, Lead Mailroom Attendant, and Mailroom Attendant positions -- took place when Godwin was on medical leave and had not been released to return to work.  As the district court noted, if a Title VII plaintiff is physically unable to perform the job applied for, he is not qualified for the position.  See Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1087 (5th Cir. 1994).  As a result, Godwin cannot show that he was qualified for the positions in question and thus cannot establish a prima facie case of discrimination.

Furthermore, throughout Godwin's brief he complains that, once he was released to return to work, Pier 1 never contacted him about returning.  Inexplicably, Godwin contends that this supports his proposition that Pier 1 discriminated against him and helps establish a prima facie case of discrimination.  To establish a prima facie case, the plaintiff must demonstrate not only that he was qualified for a job, but that he "sought" the position.  See Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996).  Pier 1 had no duty to contact Godwin about returning to work.  Rather, the burden was upon Godwin to inform Pier 1 of his medical release and to seek a position with the company -- steps he failed to take prior to his administrative discharge.[3]

---

[3]  In certain cases we may excuse a plaintiff's failure to apply for a job if he demonstrates that he was deterred from applying due to a "known and consistently enforced policy of discrimination."  Shackelford v. Deloitte & Touche, LLP, 190 F.3d

8

III.

Godwin has wholly failed to create a genuine issue of fact regarding his claims of discrimination. He has neither introduced any direct evidence of discrimination on the part of Pier 1, nor created an inference of unlawful discrimination. Therefore, we AFFIRM.

---

398, 406 (5th Cir. 1999). Godwin has failed to point to any evidence that Pier 1 had such a policy.