# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 97-31183
_____

SUHA SREERAM, M.D.,

Plaintiff-Appellant,

v.

LOUISIANA STATE UNIVERSITY MEDICAL CENTER-SHREVEPORT, ET AL,

Defendants,

JOHN MCDONALD, M.D., Medical Doctor; LOUISIANA STATE UNIVERSITY
AGRICULTURAL & MECHANICAL COLLEGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

September 16, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Suha Sreeram, M.D. ("Dr. Sreeram"), filed suit against the Board of Supervisors for the

Louisiana State University Medical Center-Shreveport ("LSUMC-S") and Dr. McDonald in his

individual and official capacities as the head of the Department of Surgery (collectively the

"defendants-appellees").  Dr. Sreeram's suit alleges that the defendants-appellees terminated her

employment in violation of Title VII of the Civil Rights Act of 1964, as well as other federal and

Louisiana state laws.  The district court granted a motion for summary judgement in favor of the

defendants-appellees and dismissed this case.  For the reasons that follow, we AFFIRM the

district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Sreeram, a woman of Indian race/national origin, graduated from Emory University School of Medicine in 1989. She then attended a two-year non-clinical surgical program at Emory University. Dr. Sreeram subsequently applied for and was accepted into the categorical surgical residency program at LSUMC-S through the National Residency Matching Program along with five other residents. She began her residency on July 1, 1992. Of the residents entering the program that year, Dr. Sreeram was the only female. One other resident was of Indian race/national origin.

Surgical residents at LSUMC-S are employed as "house officers" under one-year contracts. Each resident's performance is assessed quarterly by the Residency Review Committee ("the Committee"), which is comprised of members of the LSUMC-S medical staff. The Committee reports its evaluations to the faculty members of the Department of Surgery ("the faculty"). The faculty makes recommendations by vote to its chairman, Dr. McDonald, as to whether a particular resident should continue in the program. Dr. McDonald then makes the final decision whether to retain that resident. Each resident enters into a new contract with LSUMC-S for each year they continue in the program. Dr. Sreeram entered into three successive one-year contracts, the last commencing on July 1, 1994, and ending on June 30, 1995.

The Committee expressed concerns about Dr. Sreeram's performance in the program as early as late 1992, and voted in March of 1994 to expel Dr. Sreeram from the program, effective June, 1994. The faculty concurred. Although Dr. McDonald shared similar concerns about Dr. Sreeram's performance, he granted Dr. Sreeram's request to continue in the program for an additional year. Although Dr. Sreeram was uniformly found to be highly intelligent and

knowledgeable, the faculty, the Committee, Dr. McDonald, and other residents in the program found that she was not performing at the level expected of a third year resident. In particular, Dr. Sreeram was alleged to have difficulty managing her surgical caseload and to be indecisive in applying her medical knowledge when diagnosing her patients.

In January of 1995, the Committee again recommended Dr. Sreeram's expulsion. The faculty and Dr. McDonald concurred and Dr. McDonald informed Dr. Sreeram on January 9, 1995, that her residency would terminate on June 30, 1995. Dr. Sreeram resigned from the program on February 2, 1995. On June 22, 1995, Dr. Sreeram filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued a notice of right to sue.

Dr. Sreeram sued the Board of Supervisors, the state body charged with oversight of LSUMC-S, and Dr. McDonald in his individual and official capacities. Dr. Sreeram alleged that they had discriminated against her on the basis of gender and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; 42 U.S.C. §§ 1981 and 1983; La. R.S. 23:1006 *et seq.*; and La R.S. 51:2331 *et seq.* Dr. Sreeram also alleged state-law claims for breach of contract and intentional infliction of emotional distress.

The defendants-appellees filed an answer denying Dr. Sreeram's allegations and claiming that Dr. Sreeram was terminated because of her unsatisfactory performance. Subsequent to discovery, they filed a motion for summary judgement. The district court granted the defendants-appellees' motion for summary judgement and dismissed all state-law claims without prejudice and all federal claims with prejudice. The district court found that the record overwhelmingly established that Dr. Sreeram was not qualified to continue as a third year resident and was

therefore unable to establish a prima facie case of discrimination. In the alternative, the district court found that Dr. Sreeram had not presented sufficient evidence to create a genuine issue of material fact as to whether the Board of Supervisor's and Dr. McDonald's proffered non-discriminatory reasons for terminating her employment were pretextual. Dr. Sreeram appeals the dismissal of her Title VII claim against the Board of Supervisors and the dismissal of her §§ 1981 and 1983 claims against Dr. McDonald in his individual capacity.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of a motion for summary judgement *de novo* and applies the same criteria employed by the district court. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). Therefore, this court will reverse the district court's ruling only if it determines that the pleadings, affidavits, and other evidence establish that there is a genuine issue of material fact and that LSUMC-S and Dr. McDonald are not entitled to judgement as a matter of law. *Gardes Directional Drilling v. United States Turnkey Explor.*, 98 F.3d 860, 864 (5th Cir. 1996). *See also,* FED.R.CIV.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## III. DISCUSSION

The main issue on appeal is whether the district court erred in granting summary judgement in favor of the defendants-appellees on Dr. Sreeram's Title VII claims. Accordingly, this court must determine whether Dr. Sreeram presented a genuine issue of material fact as to whether the defendants discriminated against her in violation of Title VII.

*A.    The parties' evidentiary burdens under Title VII.*

A Title VII plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). A *prima facie* case is established by proving: (1) that the plaintiff is a member of a protected class; (2) that she was at all times qualified for the position at issue; and (3) that the defendant made an adverse employment decision despite the plaintiff's qualifications. *Id.* Establishment of a *prima facie* case gives rise to an inference of discrimination which shifts the burden of proof to the defendant who must then articulate a legitimate non-discriminatory reason for the challenged employment action. *Id.* Once the defendant asserts such a reason, the inference of discrimination raised by the *prima facie* case drops from the case. At that point, summary judgement is appropriate unless the plaintiff can prove that the defendant's rational is pretextual. *Id.*

### B. Prima Facie Case.

After reviewing the record and the parties' briefs, we find that the district court correctly concluded that Dr. Sreeram failed to establish a prima facie case of sex and/or national origin discrimination because she failed to establish that she was qualified for the position in question at all relevant times. The essential facts are as follows. Every doctor to evaluate Dr. Sreeram found that her performance as a surgeon was insufficient to allow her to continue in the program. No evidence of bias was alleged regarding most of these doctors, leaving a chorus of negative evaluations unrebutted by a single positive testimonial. The objective evidence of Dr. Sreeram's qualifications addressed only her ability to perform under test conditions, and not her ability to perform under the stressful "real life" conditions of a surgical residency. Given these facts, it is clear that Dr. Sreeram failed to establish that she was qualified and therefore failed to make out a

prima facie case of discrimination. We will now address these findings in further detail.

The record clearly demonstrates that everyone who reviewed Dr. Sreeram's performance determined that it was not commensurate with what is expected of a third-year surgical resident. The minutes from the quarterly meetings of the Residency Review Committee from January 15, 1993, to January 20, 1995, delineate Dr. Sreeram's deficiencies as a surgical resident. All of the members of the faculty who testified, expressed concern about Dr. Sreeram's professional judgement, application of professional knowledge, proficiency and skill regarding delivering patient care, and her ability to make a rapid diagnosis. Additionally, Dr. Sreeram's fellow residents considered her abilities to be weak. Dr. Sreeram failed to rebut this record with a single testimonial that she was qualified to continue as a surgical resident.

The result is the same if this court looks past the subjective testimony of those individuals whose discriminatory motive was at issue[1] and gives due weight to Dr. Sreeram's

---

[1] Dr. Sreeram alleges that Drs. McDonald, Spires, McMillan, and Sittig may have had animus against Dr. Sreeram. For example, Dr. Sreeram refers to Dr. McDonald's repeated questioning of whether Dr. Sreeram's perceived difficulties in the program were "cultural." Dr. McDonald explained in his deposition that he meant that his "impression of women in the Indian culture is that they, in general, are in an environment in which they are not as assertive as their American counterparts," and he stated that he "wondered if a part of this problem was not a lack of assertiveness, that she did not act independently and assertively in her day-to-day work both with the use of her time and with the approach to her patients, and her peers in the residency." Additionally, Dr. Spires, a member of the Committee, testified that he had concerns about why women would put themselves through a surgical residency, especially if they are planning on having children. He explained that "it's a sort of tongue and cheek thing, they're constantly tired, and they don't have time to put on their makeup and put on clothes and do a lot of the things girls need to do, and its difficult." Dr. Spires also testified that "if she got particular pleasure and was particularly efficient in surgery . . . I'm sure she could find a way to work children and a two career marriage, and that sort of thing out okay." Dr. Sreeram further alleges that Dr. Robert McMillan, a faculty member, questioned Dr. Sreeram about her height and weight and shouted that it was a medical question when she did not answer. Finally, Dr. Sreeram alleges that Dr. Michael Schwalker observed that Dr. Sreeram is "not accepted well by the 'good old boys' - based on my interactions I don't know why," and that Dr. Kevin Sittig, in

6

objective qualifications, such as her success in obtaining a medical degree, gaining admission to the residency program, and achieving higher scores on the annual in-service examinations than those of her counterparts who were retained in the program. Even then, there remains a chorus of bad reviews by faculty and other residents regarding whom there was no evidence of discriminatory motive and which is unrebutted by a single positive testimonial on Dr. Sreeram's behalf.[2] Notably, in those cases where the court has looked past the employer's subjective evaluations to determine whether the plaintiff proved her qualifications, the plaintiff retained the burden of proving her ability to perform in the position in question. *See Waltman v. Int'l Paper Co.,* 875 F.2d 468 (5th Cir. 1989) (finding *prima facie* case of discrimination was made where plaintiff certified her ability to perform the job in question in one half the time of the person promoted ahead of plaintiff); *Bienkowsi v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir. 1988) (noting that summary judgement is not precluded where plaintiff presents no significant evidence that she is qualified). Thus, even when viewing the evidence in the light most favorable to Dr. Sreeram, the record cannot support a finding that she was qualified to continue as a third year resident.

Moreover, it is one thing to test well, quite another to perform when life is literally on the line. At issue in establishing Dr. Sreeram's qualifications to enter into a fourth year residency was

evaluating Dr. Sreeram, commented on her personal hygiene, stating that Dr. Sreeram needed deodorant.

[2] Dr. Sreeram did not allege that Drs. Alley, Clay, Singh or others among the chief residents were biased against her and yet all of these individuals gave her bad reviews. Moreover, the minutes of the committee characterized Dr. Sreeram as a "serious problem" with 15 unsatisfactory items by six staff." Yet Dr. Sreeram did not allege that all of these doctors had animus against her.

7

whether Dr. Sreeram had the clinical ability and confidence to *apply* her objective knowledge and take on increased responsibility within the fast paced realities of administering medical care to actual patients. The objective qualifications noted by Dr. Sreeram merely demonstrate that her knowledge and intelligence were sufficient. Therefore, such objective qualifications can not, by themselves, overcome the evidence of Dr. Sreeram's inability to apply her knowledge in managing a large number of patients or her apparent lack of confidence to make a rapid diagnosis. Since none of the evidence demonstrates Dr. Sreeram's ability to perform under the rigorous conditions of third year residency, she failed to establish that she was qualified. We therefore find that Dr. Sreeram failed to establish a prima facie case of discrimination.

### C. Pretext.

Even after indulging in every reasonable inference in favor of the Dr. Sreeram, we find that the record is so suffused with evidence that the Dr. Sreeram was unqualified, that no rational trier of fact could conclude that Dr. Sreeram was terminated for any reason other than her deficiencies as a surgeon. Thus, we find that Dr. Sreeram did not present evidence sufficient to create a genuine issue of material fact as to whether the legitimate, non-discriminatory reason for Dr. Sreeram's termination proffered by appellees was pretextual.

Dr. Sreeram's pretext argument is based on: (1) the above mentioned remarks regarding her gender and ethnicity; (2) the retention of a white, male third year resident even though his in-service training scores were below Dr. Sreeram's, the Committee had ranked him below Dr. Sreeram in its January 20, 1995 report, and the Committee had recommended his termination in that report; and (3) statistical evidence that only 6 of the 99 residents who trained for the surgery residency program at LSUMC-S over the last ten years were women and that, of those six, only

two completed the program.

We will address each of the three in explaining why they do not add up to a genuine issue of material fact regarding pretext. The remarks made by various LSUMC-S staff regarding Dr. Sreeram's gender and ethnicity are insufficient to support an inference of pretext. As previously discussed, Dr. Sreeram failed to raise any evidence of discriminatory motive regarding many of the individuals who testified that her performance was unsatisfactory. Dr. Sreeram failed to find a single individual who would testify that she was qualified to be a become a fourth year resident. In order to find pretext, the jury would have to go well beyond the record to find evidence of animus where none has been offered. Thus, no reasonable juror would conclude that Dr. Sreeram was terminated because of gender or race/ethnic discrimination.

Case law supports this conclusion. First, it is well settled that "stray remarks" alone will not overcome overwhelming evidence corroborating defendants' non-discriminatory rational. *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1995). This court has held that such remarks may be sufficient evidence of discrimination if the comments are "(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999) (citing *Brown*, 82 F.3d at 655.) However, even if we were to find that such circumstantial evidence of pretext is present in this case, summary judgement is still appropriate where, as here, the evidence overwhelmingly supports defendants' proffered non-discriminatory rational. *See Brown,* 82 F.3d at 656 (upholding summary judgement in favor of defendant in age discrimination case where strong evidentiary support for defendant's cost cutting

9

rational was not outweighed by age related comments, such as "old goat" and "you just can't remember, you're getting too old," made close in time to termination of plaintiff by individual who terminated plaintiff).

Indeed, the comments alleged by Dr. Sreeram to show discriminatory animus are less blatantly discriminatory than those found by this Circuit to be insufficient evidence of discrimination in the absence of some proof of a causal connection between the incident and the adverse employment action. *See, e.g., Ray v. Tandem Computers, Inc.*, 63 F.3d 429 (holding that supervisor's scheduling of a lunch meeting at Hooter's, remark by supervisor that he was going to get rid of the "cunt in the office" made four years prior to plaintiff's discharge, and remark by another supervisor that plaintiff was not the "best man for the job" did not combine to support an inference of sex discrimination).

Second, Dr. McDonald, one of the individuals alleged to have discriminated against Dr. Sreeram, granted her request to stay in the program for another year despite the Committee's recommendation that her residency be terminated. *See Brown,* 82 F.3d at 657 (expressing approval of "same actor" inference whereby fact that individual who allegedly discriminated against plaintiff was the same individual who hired plaintiff gives rise to an inference that discrimination was not the motive behind plaintiff's termination) (citing *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991)). For these reasons, the remarks regarding Dr. Sreeram's ethnicity and gender are insufficient to create a genuine issue of material fact regarding pretext.

Dr. Sreeram's statistical evidence and the evidence regarding the white male resident who was retained despite having lower scores than Dr. Sreeram, are also insufficient to raise a genuine issue of material fact regarding pretext. The statistical evidence is unpersuasive because a female

10

completed the program the same year that Dr. Sreeram was terminated. The Committee ranked another female resident, Dr. Franko, number one out of five residents at the PGY-VI level. Additionally, Dr. Singh, a resident of Indian origin, was ranked third out of six residents the same year Dr. Sreeram's residency was terminated. Such evidence can not support the inference that the medical center or Dr. McDonald discriminated against Dr. Sreeram because of her sex or national origin. Finally, the white male resident who was retained despite his lower in-service exam scores, did not face the same criticisms as did Dr. Sreeram regarding his diagnostic abilities, surgical skills or ability to effectively make decisions. Defendants-appellees' profferd non-discriminatory reason for Dr. Sreeram's termination regards her performance as a resident, not her in-service exam scores. Therefore, the decision to retain the white male resident provides an insufficient basis for inferring pretext. For these reasons, the evidence on the record was insufficient to support an inference of discrimination and the district court was correct to grant summary judgement on behalf of the defendants.

### D. *Other Issues*.

Since we have found that the evidence on the record was insufficient to support an inference of discrimination, it follows that Dr. Sreeram did not come forward with "direct evidence" of discrimination so as to trigger evaluation of her claim under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). This court held in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995), that direct evidence is defined as evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.

Under *de novo* review, this court makes its own determination whether the record justified summary judgement. Therefore, it is unnecessary to give separate treatment to Dr. Sreeram's

contention that the trial court usurped the fact finder's function to decide disputed issues of material fact. The same is true of the contention that the trial court based its dismissal of Dr. Sreeram's Title VII claims on inappropriate facts and issues not raised by the defendants.

Finally, the burden shifting analysis prescribed in *McDonnell Douglas*, 411 U.S. at 792, for employment discrimination claims is also applicable in such suits brought under §§ 1981 and 1983. *See Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Thus, Dr. Sreeram's claims against Dr. McDonald individually under 42 U.S.C. §§ 1981 and 1983 fail with her Title VII claims.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgement in favor of the defendants-appellees.