Trina JERGE, Plaintiff,

v.

The CITY OF HEMPHILL, TEXAS, Defendant.

No. 1:01–CV–607.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 7, 2002.

.

Margaret A. Harris, Butler & Harris, Houston, TX, for plaintiffs.

David L. Allen, James Stephen Roper, Zeleskey Cornelius Hallmark Roper & Hicks, Lufkin, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is the defendant's Motion for Summary Judgment, and the court having considered the motion is of the opinion that Summary Judgment should be GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff Trina Jerge ("Jerge") brings this action pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. §§ 2000e *et seq*, and claims she was subjected to gender-based discrimination while employed by defendant City of Hemphill, Texas ("Hemphill"). Jerge was hired by Hemphill as City Secretary in October of 1992, and continued in its employ for approximately nine years. For the initial eighteen months of her tenure with the city, there was no acting city manager. During that time, Jerge contends she performed many of the duties normally the responsibility of a city manager.

In November of 1995, Hemphill appointed Frank Coday ("Coday") as City Manager. As City Secretary, Jerge worked directly under Coday. Jerge contends that after Coday became City Manager, he began to harass her by screaming at her, belittling her, not allowing her to respond, and blaming her for a several things she had no control over. On several occasions, Jerge complained about Coday's behavior to the mayor of Hemphill, Robert Hamilton. Mayor Hamilton perceived the conflict as a personality conflict or "spat" and attempted to satiate both individuals' tolerance of the other. Deposition of Robert Hamilton at 57.

In the fall of 2000, Coday announced he was retiring. Jerge submitted her resume for the position of City Manager along with other applicants, both city and noncity employees. Jerge made the list of six applicants the City Council interviewed, however, the council selected Don Iles as the new City Manager. After this decision, Jerge resigned from her position as City Secretary.

Jerge alleges that because Don Iles was male and was not a government employee at the time, and therefore not as senior as she, the council engaged in gender based discrimination. Additionally, Jerge alleges she was constructively discharged when she was passed over for the position of City Manager. The defendant has brought a motion for summary judgment for all claims. In Jerge's response to this motion, she also alleges she was subjected to a hostile work environment while working for Coday.

## II. SUMMARY JUDGMENT STANDARD

■ Summary judgment is not favored in claims of employment discrimination, but is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir.1993); Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court should view the evidence, and inferences from that evidence, in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir.2000). Particularly in Title VII cases, courts must refrain from engaging in the jury functions of making credibility determinations, weighing the evidence, or drawing legitimate inferences from the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Employment discrimination claims brought under 42 U.S.C. § 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII. *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir.1999).

## III. FAILURE TO HIRE GENDER DISCRIMINATION CLAIM

■ Jerge claims that she was not hired as City Manager because of her gender. To survive summary judgment on this claim, Jerge must make a showing sufficient "to establish the putative existence of every element that is essential to her case." *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1084–85 (5th Cir.1994) (citation omitted). To do this, Jerge must establish a prima facie case of discrimination. *Id.* at 1085. If she does not, "there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (citation omitted). A plaintiff can establish a prima facie case under Title VII by either direct or indirect evidence of discrimination. Id., *Gant v. Sabine Pilots,* 204 F.Supp.2d 977, 980 (E.D.Tex.2002).

### A. Direct Evidence of Gender Discrimination

■ A plaintiff can establish a prima facie case of employment discrimination if "there is direct evidence that an employer placed substantial negative reliance on an illegitimate criterion in reaching an employment decision...." *Davis,* 14 F.3d at 1085. Direct evidence is that which if believed, "proves the fact of discriminatory animus without inference or presumption." *Id., see also Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir.1995). Jerge has produced no direct evidence of gender discrimination by the defendant.

The Fifth Circuit has found that a supervisor's open and routine use of racial slurs "constitutes direct evidence that racial animus was a motivating factor...." *Davis,* 14 F.3d at 1085, *quoting Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993). Further, the Supreme Court has held that statements describing a partner as "macho", "overcompensated for being a woman", needing to "take a course at charm school", and advising her to "walk more femininely, talk more femininely, dress more femininely ... and wear jewelry", directly suggest the existence of bias, no inference is necessary. *Davis,* 14 F.3d at 1085, *quoting Price Waterhouse v. Hopkins,* 490 U.S. 228, 235, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The Fifth Circuit went on to state that the above offending comments "cannot not reasonably be interpreted as anything other than a reflection of bias—either racial or gender-based." *Davis,* 14 F.3d at 1085.

■ The evidence adduced by Jerge is of an altogether different and less compelling character, even when at this stage it is viewed in the light most favorable to Jerge. Jerge alleges that the City Council members asked her inappropriate gender-based questions during the course of her interview. During his deposition, council member Pierce Edwards admitted to probably saying he was "concerned about a woman being called out [at night], that that (sic) wouldn't be a good idea." Deposition of Pierce Edwards at 35. Councilman Herbert Rice said he asked her about possibly being called out in the middle of the night, to which she responded she didn't have a problem with it. Deposition of Herbert Rice at 50. Herbert Rice further explained he was reasonably sure each councilman asked the same questions of every applicant, and that he had asked the male applicants the same question concerning being called out at night. *Id., accord* Deposition of Joseph R. Tomlinson at 39. The only variance in questions, according to Councilman Joseph Tomlinson, was for an applicant who lived out of town when he was asked if he would move to Hemphill if he got the job. *Id.* Joseph Tomlinson also asked Jerge if it would be a

problem if she had to get out with a crew at two or three in morning, to which she answered it would not be. *Id.* The last piece of evidence Jerge submits, is that Councilman Lee Dutton, Jr., stated in response to a question about whether Jerge could handle the job: "Good question. I felt like she probably could do the paperwork, but I didn't know if she could handle the other aspects of the job, the outside parts." Deposition of Lee Dutton, Jr., at 32. While some of these statements may be indicative of an antiquated view of women, none of them, without inference, evidence an intent to discriminate in the hiring decision.

Indeed, in *Davis*, the Fifth Circuit found that notes made by an interviewer in the margin of an evaluation form describing the applicant and the plaintiff's accusations that he surveyed her "from the neck down", was not compelling. *Davis*, 14 F.3d at 1086. The court went on to address the interviewer's question concerning the applicant's ability to supervise and handle disputes with and among men. *Id.* While the Fifth Circuit conceded that it raised some specter of gender consciousness, it concluded that it certainly did not, standing alone, indicate gender animus. *Id.* The same is true in this case. While some of the questions may have been based on gender consciousness, there is no evidence that consciousness played a role in the decision not to hire Jerge. There is no direct evidence of gender bias. Further, even if it had been determined that one of the councilmen was biased, that in no way explains the unanimous vote of the City Council in favor of Don Iles. As the Fifth Circuit stated in *Davis*, "A rational trier of fact might conclude that [plaintiff's] allegations present a scantilla of evidence, but a mere scantilla is not enough to defeat a motion for summary judgment." *Id.* For these reasons, this court is of the opinion that Jerge fails to produce direct evidence of gender discrimination.

## B. Indirect Evidence of Gender Discrimination

■ There is a three step burden-shifting process for establishing a prima facie case by using indirect evidence. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Those steps are: 1) the plaintiff must prove by a preponderance of the evidence a prima facie case of disparate treatment; 2) if the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision; and 3) if the defendant carries this burden, the plaintiff may attempt to demonstrate that the defendant's proffered explanation is pretextual. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

■ To establish a prima facie case of gender discrimination, Jerge must show that 1) she is a member of a protected group; 2) she applied for the position of City Manager; 3) she was qualified for that position when she applied; 4) she was not selected for that position; and 5) after she was not hired, the position either remained open or Hemphill hired a male to fill the position. *Davis*, 14 F.3d at 1087. Jerge has submitted sufficient evidence to establish a prima facie case. Jerge is a member of a protected group, she applied for the position, she met the minimum qualifications, she was not selected, and the person hired by Hemphill was a man.

■ Once a prima facie case is constructed, a presumption of discrimination arises which the defendant must refute by articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. If such a reason is articulated that would support a

finding that the action was nondiscriminatory, the inference of discrimination raised by the prima facie case disappears. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Defendant argues that it selected Don Iles instead of Jerge because Iles was better qualified. The selection of a better qualified applicant is a legitimate, nondiscriminatory reason for selecting one applicant over another. *Price v. Fed. Express Corp.*, 283 F.3d 715 721 n. 2 (5th Cir.2002) (quotation omitted). Jerge contends that Don Iles was not better qualified, that in fact, she was the best qualified applicant in the pool. The court disagrees. However, Jerge's argument is more appropriately addressed in the final step of the burden-shifting process.

■■■ The final step in the burden-shifting framework allows the plaintiff to try and prove the defendant's proffered statement is pretextual. "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002) (citations omitted). If Jerge can prove that Hemphill's articulated reason is false, then coupled with the fact that she has established a prima facie case the trier of fact could conclude that the employer discriminated against her. *Id.* (citation omitted), *Gant*, 204 F.Supp.2d at 987. Jerge makes two primary arguments to support her contention that Hemphill's articulated reason for its employment decision was pretextual. First, she claims that she was better qualified than Don Iles, thereby demonstrating pretext. Second, she points to several of the statements made by the City Council members and by Coday in an attempt to show that the real reason for the decision was because of her gender. As she has failed to adduce sufficient evidence to support either argument, both are unpersuasive.

■■■ The Fifth Circuit has held that "a plaintiff can take his case to a jury with evidence that he was clearly better qualified" than the applicant selected for the position at issue. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir.1992); *see also EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444 (5th Cir.1995) ("A factfinder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees selected."). "However, this evidence must be more than merely subjective and speculative." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir.1996). "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Id.* The disparity between the two candidates must be great because the Fifth Circuit has stated that the evidentiary standard for this issue requires the "disparities in qualifications [to] be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Texas Dept. of Prot. & Reg. Servs.*, 164 F.3d 277, 280–81 (5th Cir.1999). Moreover, in pursuing this inquiry, the Fifth Circuit noted that "the judicial system is not as well suited by training and experience to evaluate qualifications ... in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated." *Louisiana Office of Community Servs.*, 47 F.3d at 1445. Discrimination laws were not meant to be "vehicles for judicial second-guessing of business decisions." *Walton v. Bisco In-*

*dustries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997). Thus, "[u]nless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Id.*

■ Jerge contends that she was clearly better qualified than Don Iles. The defendant argues that based upon its criteria, she was not better qualified. When deposed, the councilmen testified they were looking for someone with a college degree, thus the defendant argues that a heavy factor of qualification was education. Jerge disputes this by claiming that the City Manager Prior to Jerge's employment (before Coday) did not have a college degree and did not have to compete with any other applicants for the position because he was appointed from a lesser job from within the city. However, this court is unwilling to discount the testimony of the councilmen that they were looking for a college degree. Indeed, the composition of the council has probably changed in the ensuing decade, as have, perhaps, its views on necessary qualifications to manage a changing city. Regardless, this court is not in the position to second guess a city council on what qualifications it is looking for, and the appropriate weight to accord each.

Jerge's resume included eight years experience as City Secretary and the duties performed during that time, and also included experience in different capacities in the banking field. Her resume stated she had attended numerous seminars and training programs related to city management, as well as focusing on general studies at Angelina Jr. College from 1977 to 1980.

Don Iles' resume included experience as a small business manager/owner, as a li-

censed professional fishing guide, as a United Parcel Service employee—part of which was in a supervisory role, as a sales assistant, and in apartment maintenance. His resume also stated that he was graduating Magna Cum Laude from Stephen F. Austin State University in December with a BBA in finance and planned to continue part-time toward a MBA in management. Don Iles' resume also stated he had attended Lamar University in the college of business. His resume additionally listed numerous community involvements, including being a member of the Hemphill Voluntary Fire Department and Sabine County Chamber of Commerce and coaching a Dixie Youth League team.

When deposed, the councilmen also stated that they were very impressed with the Don Iles' interview, and the plans he expressed for the City of Hemphill. Jerge contends that Don Iles did not have any city experience, the lack of which should have factored into the hiring decision. Several councilmen, however, stated they thought the fact Don Iles had owned and managed his own business gave him comparative work experience to that of a city manager. This court does not disagree with the councilmen on this issue. Upon a review of the qualifications and experiences of the two applicants, this court finds it is not clear that Jerge was better qualified than Don Iles, and will not second-guess the City Council's decision.

■ Jerge next attempts to show Hemphill's articulated reason is pretextual by pointing to the same evidence discussed above in the direct evidence analysis, which she claims shows discrimination lay at the heart of the decision to select Don Iles. Jerge also contends that Coday played an improper role in having the City Council select Don Iles instead of her. The plaintiff alleges that Coday informed people he was supporting Don Iles for the position of City Manager before the vote.

She also refers to the comments and actions of Coday to support the idea that the City Council's decision was based on discriminatory motive. However, while the actions of Coday prior to the Council's vote will further be discussed infra, this court finds they are not relevant in this analysis because the members of the City Council testified at deposition that Coday did not tell them, and they did not know, who he was supporting for the position. *See, e.g.,* E.W. Ener Jr. Deposition at 20, Herbert Rice Deposition at 22–23, Joseph R. Tomlinson Deposition at 37. In fact, originally the council members decided to interview only three applicants, but because no city employee was included in that number, Coday suggested they increase the number to six and include Jerge. Therefore, the question of whether Coday was motivated by discriminatory animus in the support of Don Iles is not relevant to the analysis of whether the City Council was so motivated in its selection of Don Iles.

For reasons similar to those discussed above regarding direct evidence of a prima facie case, the comments and questions of the City Councilmen, are not sufficient to show that gender discrimination was at the heart of the decision not to offer the job to Jerge. This court recognizes that the elements of proof for a plaintiff's direct evidence theory and for a pretext theory differ, however the evidence submitted by the plaintiff is the same so it is unnecessary to explicitly reference that evidence again. *See Mooney,* 54 F.3d at 1217. The Fifth Circuit has held that stray remarks will not overcome overwhelming evidence corroborating defendant's non-discriminatory rationale. *Sreeram v. Louisiana State University Medical Center–Shreveport,* 188 F.3d 314, 320 (5th Cir.1999). The Court further held that "even if we were to find that such circumstantial evidence of pretext is present in this case, summary judgment is still appropriate where, as here, the evidence overwhelmingly supports defendants' proffered non-discriminatory rationale." *Id., citing Brown v. CSC Logic, Inc.,* 82 F.3d 651, 656 (5th Cir.1996).

In this case, not only is there overwhelming evidence that supports the council members articulated reason, but the evidence is also insufficient to even find pretext. *See, e.g., Ray v. Tandem Computers, Inc.,* 63 F.3d 429 (5th Cir.1995) (holding supervisor's scheduling of a lunch at Hooter's, remarks that he was going to get rid of the "cunt in the office" made four years prior, and remark that plaintiff was not the best man for the job did not combine to support an inference of sex discrimination). The council members' questions regarding whether Jerge would be willing to be called out in the middle of the night, when they also asked the questions to male applicants, does not raise discriminatory animus sufficient to allow belief it was at the heart of the decision not to hire Jerge. Additionally, the concern that one councilman had with Jerge's ability to handle the outside part of the job does not indicate that a discriminatory motive lay at the heart of his decision to vote for Don Iles, and is even further removed from the council's unanimous vote. Given the respective qualifications of the two applicants, Jerge has failed to produce any evidence from which the court could conclude that Hemphill's proffered reason for hiring Don Iles, that he is better qualified, is false. For these reasons, this court finds Jerge has failed to show a reasonable factfinder could infer the true reason Jerge was not hired as City Manager was discriminatory, thereby entitling Hemphill to summary judgment on this claim. *See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996).

## IV. HOSTILE WORK ENVIRONMENT CLAIM

This claim is associated with the term of Jerge's employment during which Coday

was City Manager and her direct supervisor. Before the substantive claims involving Jerge's hostile work environment claim can be addressed, the defendant raises two procedural issues.

■ First, the defendant alleges that parts of the hostile work environment claim occurred outside the statute of limitations. Specifically, Hemphill argues that many of the acts that Jerge contends compose the hostile work environment claim, occurred more than the Title VII applicable 300 days before she filed her EEOC complaint. However, in the recent Supreme Court case of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2068, 153 L.Ed.2d 106 (2002), the Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." In light of this recent Supreme Court case, this court finds that Jerge's hostile work environment claim, and the acts allegedly composing that claim, are not time barred.

■ Second, the defendant claims that Jerge failed to include a claim for sexual harassment on her Equal Employment Opportunity Commission ("EEOC") complaint. However, the Fifth Circuit has recently held that, "[i]n this circuit, a claimant is not required to assert all legal claims in the EEOC charge; rather, it is sufficient if in the EEOC charge the claimant asserts the facts that are the basis for the legal claims." *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 795 (5th Cir.2002). "[I]t is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Id., quoting Sanchez v. Standard Brands*, 431 F.2d 455, 462 (5th Cir.1970). In the present case, the hostile work environment claim is premised on the same facts alleged for the other claims.

■ Substantively, in a hostile work environment claim, "[t]he critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsberg, J., concurring). Whether an environment is hostile is determined by examining the totality of the circumstances. *See Id.* at 23, 114 S.Ct. 367.

■ A preliminary issue in a hostile work environment claim is whether Coday was in a supervisory position over Olsen. *Faragher v. City of Boca Raton*, 524 U.S. 775, 803, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (recognizing the difference between harassment from a supervisor and a coworker). "The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his control." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Id.* at 765, 118 S.Ct. 2257.

Based upon the evidence, the court finds that Coday was a supervisor over Jerge during his time as City Manager. Although Jerge contends that she suffered a tangible employment action by not being promoted to the position of City Manager, it was not at the hands of Coday. The City Council, not Coday, decided to hire Don Iles instead of Jerge. The employment action did not originate from Coday. Thus, this is properly termed a hostile

work environment type claim by the plaintiff, as opposed to a quid pro quo type claim. However, although available under a hostile work environment claim, Hemphill has not raised the two part affirmative defense. *Id.*

■ Under Fifth Circuit precedent, to establish a claim of hostile work environment based on sexual harassment, Jerge must show 1) she belongs to a protected class, 2) she was subject to unwelcome sexual harassment, 3) the harassment was based on sex, 4) the harassment affected a term, condition, or privilege of employment, and 5) Hemphill knew or should have known about the harassment and failed to take remedial action. *Cain v. Blackwell,* 246 F.3d 758, 760 (5th Cir.2001). However, as stated above, Hemphill is vicariously liable if a hostile work environment existed because Coday was a supervisor, so the fifth prong establishing direct liability via negligence is not necessary. Additionally, this case deviates from the usual hostile work environment claim because Jerge is not alleging she was subject to any sexually charged overtures, such as unwanted touching, advances, sexual looks, etc. *See, e.g., Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405 (5th Cir.2002), *Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642 (5th Cir.2002), *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295 (5th Cir.2001), *Mota v. University of Texas Houston Health Science Center,* 261 F.3d 512 (5th Cir.2001), *Cain,* 246 F.3d 758. Rather than being based on sexuality, the allegations Jerge makes rests on her assertion Coday treated her abusively because of her gender.

■ There is evidence that suggests Coday was an abusive and domineering boss towards Jerge. There is substantial evidence that Coday often yelled at and belittled Jerge. *See, e.g.,* Deposition of Cecil Mott at 5–6, Deposition of Melba Rhodes at 43, Declarations of Jerge, Roy

Walden, Joe Procell, Linda Rudd, Lynn Williams. Coday also said Jerge had not been doing her job adequately since she had a hysterectomy. Deposition of Mott at 10. Coday told one city employee that Jerge did not have the "nuts" to do the job as City Manager. Declaration of Walden. Jerge also alleges that Coday once said "you are one of the highest paid woman in Sabine county", in a manner that indicated he was upset she was paid almost as much as him, and that he often referred to other women in positions of authority as "bitches". Deposition of Jerge at 42, 85. Additionally, it is alleged Coday once ran through the office with a cucumber stuck in the front of his pants, and also occasionally made gender-derogatory remarks. *See* Deposition of Rhodes at 47, 66, 72–74. Much of this evidence may not be admissible at trial due to its conclusive nature and hearsay. However, there is sufficient admissible evidence to establish that Coday was abusive towards Jerge, but this court questions whether it was due to her gender.

Coday was not unpleasant to the majority of the female office employees, which weighs against finding Jerge was treated with hostility because of her sex, or gender. While not sufficient for this court to rest upon, there is a logical distinction between a sexually-based hostile work environment claim and a gender-based hostile work environment claim. A supervisor can create a sexually hostile atmosphere for one out of many female (or male) employees based on personal attraction or contact. However, less convincing is Jerge's contention that Coday treated her abusively because of a general disdain for the female gender, yet did not also treat other members of that gender abusively. Other female office staff have testified, and Jerge herself has acknowledged, that he did not treat them badly. While the fact Coday did not treat other female office staff badly weighs in favor of finding Co-

day's treatment of Jerge had nothing to do with her gender, it is not alone sufficient.

As the Second Circuit has said, "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important·in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano v. Costello*, 294 F.3d 365, 377 (2nd Cir.2002). Upon review of the evidence, this court finds that the critical issue is whether Coday acted abusively towards Jerge because she was a woman, or because he just did not like her—regardless of whether she was a woman or not. Coday may simply have been a mean and unjust boss. Or, he may have resented the fact that a person in Jerge's position was a woman. This court is of the opinion that question is for a jury to decide. If they decided the latter, then the second and third prong of the hostile work environment test will have been met. That factual determination would mean that Jerge was subjected to unwelcome gender harassment that was based on gender animus—or stated another way, but for the fact of her gender, she would not have been the subject of harassment. *See, e.g.*, *Henson v. City of Dundee*, 682 F.2d 897, 904–05 (11th Cir.1982). Therefore, the remaining question for the jury would be whether it affected a term, condition, or privilege of employment. For these reasons, this court is of the opinion summary judgment should be denied on the gender-based hostile work environment claim.

## V. CONSTRUCTIVE DISCHARGE CLAIM

▮ To prove constructive discharge, Jerge would have to show that a "reasonable person in [her] shoes would have felt compelled to resign." *Benningfield v. City of Houston*, 157 F.3d 369, 378

(5th Cir. 1998), *quoting Landgraf v. USI Film Products*, 968 F.2d 427, 429 (5th Cir.1992). Jerge has not produced evidence establishing that a reasonable person in her shoes would have felt compelled to resign.

First, Jerge complains of Coday's treatment in alleging that she was constructively discharged. However, she waited until Coday retired before resigning. Jerge maintains that Coday would have been around City Hall, despite retiring. However, she cannot know how much contact she would have had with Coday, or what type of boss Don Iles would have been.

Secondly, Jerge had an offer of employment at a trucking company when she interviewed for the job of City Manager. The following is an excerpt of Jerge's deposition.

Q: Now, when did that first job offer get offered to you?

A: Right after the—I think it was right after the application process was going on.

Q: Before you knew whether or not you got it or not?

A: Yes.

Q: So then I need to ask you: Was it your intent that if you did not get the City manager's (sic) job, that you were going to accept the job at Gooch Trucking?

A: I told him I would think about it.

Deposition of Trina Jerge at 118–19.

Given that Jerge was considering leaving the city's employ, and had another job offer, her argument in support of her constructive discharge claim is unpersuasive. Having another job offer is not necessarily probative, because it is not unusual to look for future employment before leaving a job. However, the fact she either wanted to be City Manager or she was going to think about leaving for another job casts doubt on her assertion that she was constructively discharged.

In sum, Jerge has not presented any evidence that a reasonable person would have felt compelled to leave her job. Jerge had yet to work for Don Iles, and Coday had just retired. The fact that she was passed over for the job of City Manager is not sufficient in this context, especially since she was considering another offer if she didn't get the job. For these reasons, this court is of the opinion that Jerge's constructive discharge claim should be dismissed.

## VI. CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part defendant's Motion for Summary Judgment. Accordingly, plaintiff's failure to hire and constructive discharge claims against Hemphill are dismissed with prejudice, only the hostile work environment claim remains.