United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 10, 2003**

Charles R. Fulbruge III
Clerk

Revised November 12, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 02-41722
_____

TRINA JERGE,

                              Plaintiff - Appellant,

                    v.

THE CITY OF HEMPHILL, TEXAS

                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
1:01-CV-607

_____

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

    Plaintiff-Appellant Trina Jerge initiated this action

against her former employer, the City of Hemphill, Texas (the

City), alleging gender discrimination in violation of 42 U.S.C. §

1983 and Title VII of the Civil Rights Act of 1964.  The City

filed a motion for summary judgment, which the district court

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

granted in part and denied in part.  Jerge appeals the district court's denial of her claims for failure-to-hire and constructive discharge.  We find that the record reveals direct and circumstantial evidence sufficient to raise a genuine issue of fact as to whether the City unlawfully discriminated against Jerge.  We therefore vacate the judgment of the district court and remand the case for trial.

I.

The City of Hemphill, Texas, is governed by an elected mayor and a city council comprised of five elected officials, all of whom are male.  The daily administration of City business is conducted by the City Manager, who is assisted by the City Secretary.  In the mid-1980s, the City hired Tommy Neal as City Manager.  The City did not advertise the position, but instead promoted a City employee to the position.  At the time of Neal's appointment, Neal had experience working for the City, but he did not have a college degree.  Neal left the City Manager's Office in 1992.

In October 1992, the City hired Jerge as City Secretary. The City Manager position remained unfilled for several years after Neal's departure.  During the first few years of her employment with the City, Jerge performed the bulk of the duties normally assigned to the City Manager as well as performing her own duties as City Secretary.  She received no complaints about

2

her work, and Mayor Robert Hamilton often expressed satisfaction with her performance.  Despite assuming many of the duties of City Manager, Jerge did not receive the title of City Manager, nor did she receive the attendant pay increase.

In November 1996, the City promoted Frank Coday from City Superintendent to City Manager.  As before, the City did not advertise the position, nor was the hiring identified on the agenda for the council meeting.  As City Secretary, Jerge reported directly to Coday, and their working relationship was, by all accounts, acrimonious.  In October 2000, Coday announced his intention to retire from the position of City Manager and let it be known that he was supporting a man named Don Iles for the position.

Upon learning of the impending vacancy, Jerge expressed to the Mayor her interest in applying for the job of City Manager. Initially, Mayor Hamilton encouraged her.  However, after speaking with Councilman Ener, the Mayor became less supportive of her candidacy.  Jerge stated that the Mayor told her it was his appointment and that he would appoint her if she wanted the job, but warned her that the council would "never go along with it because they don't think a woman can do the job."

Jerge officially applied for the position of City Manager and interviewed for the job along with several other finalists. During her interview, Jerge was told she had five minutes to explain why she wanted the job.  In response, Jerge listed

3

several substantive reasons why she felt she was right for the job, including her experience, her administrative ability and her knowledge of and love for the City. Councilmen Tomlison and Rice each asked Jerge how she would contend with a situation in which she was called out in the middle of the night.[1] The interviewers did not ask her about her education or about her past experience performing the duties of City Manager.

Upon completing the final interview, the council unanimously selected Don Iles, who had recently earned a college degree, but who had no experience in municipal government. Although the Mayor was present at the deliberations, he declined to vote for any candidate and instead left the decision to the council.[2]

Jerge resigned following the council's decision to appoint Iles. Jerge avers that she was "devastated" because she perceived that she was denied a "fair opportunity" in her home town merely because she was a woman. She subsequently initiated the present action.

---

[1]Jerge answered that she would not have a problem being called out to work at night. Jerge explained to the councilmen that as a City Judge, she was called out at night to perform duties such as issuing arrest warrants, entering emergency protective orders and performing inquests.
Jerge asserts in her declaration that she was not asked at the interview about her ability to engage in or supervise outside work, but she states that she was well acquainted with "outdoor work" as she was raised on a farm and has a significant amount of experience working outdoors and making repairs.

[2]The council meeting in which the council voted to appoint Iles was not tape recorded, which was a departure from the council's usual practice.

II.

This Court reviews *de novo* a grant of summary judgment and applies the same standard as the district court. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).[3] To mount a claim for gender discrimination in violation of Title VII, Jerge must demonstrate that she was not selected for the City Manager position because of her sex. 42 U.S.C. §§ 2000e *et seq*. She may do this in one of two ways. She may present direct evidence of discrimination. Alternatively, she may provide circumstantial evidence of discrimination in accordance with the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Jerge contends she has presented both direct and circumstantial evidence of discrimination, and we agree.

---

[3]Thus, to determine if summary judgment was properly entered in favor of the City, we review the record in the light most favorable to Jerge and resolve all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we will affirm the district court's judgment only if we find that those facts that are material to Jerge's claim are undisputed by the parties; at this stage of litigation, the reviewing court will not "step into the stead of the jury and weigh the evidence in a search for truth, but is instead to determine whether there exists a genuine issue for trial." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003); *see also Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (stating that in deciding whether summary judgment was properly granted, "this court will not weigh the evidence or evaluate the credibility of witnesses.").

**A.   Direct Evidence**

If a plaintiff presents direct evidence of discrimination, the *McDonnell - Douglas* framework does not apply, and the burden shifts directly to the defendant to show that he would have taken the same action regardless of the impermissible criterion. *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003); *Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001).

Direct evidence is "evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Portis v. First Nat'l Bank*, 34 F.3d 325, 328-29 (5th Cir. 1994) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)) (alteration in original). "In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis, not necessarily the sole basis, but *a* basis, for the adverse employment action." *Fabela*, 329 F.3d at 415.

To that end, Jerge presents evidence that both the Mayor and the city councilmen considered her gender to be a relevant factor in their decision not to appoint her City Manager.[4]  Jerge

---

[4]Jerge presents evidence that Coday often yelled at her and berated her.  She also presents evidence that Coday supported a male candidate, Don Iles, who had no previous experience working for the City.  However, most of Jerge's allegations concerning Coday are primarily relevant to her hostile workplace claim,

presents evidence that the Mayor initially supported her candidacy, but a few days later, after a conversation with Councilman Ener, the Mayor expressed reservations based solely on Jerge's gender. Jerge avers that the Mayor told her that, based on his conversation with a councilman, the Mayor believed the council would not support her candidacy because they "don't think a woman can do the job." Jerge also presents deposition evidence that Councilman Dutton expressed reservation as to whether the two women applicants could handle the "outside parts" of the job.

_____

which she has not appealed.

Jerge does contend that Coday treated her differently because she was a woman and that Coday remarked that Jerge lacked the "nuts" for the job of City Manager. Jerge also presents evidence that Coday informed Cecil Mott that Jerge had not been doing her job adequately since she had her hysterectomy and that he did not feel she could handle the position of City Manager and that the community would never accept a woman as City Manager. These remarks could potentially amount to direct evidence of discriminatory intent. However, because Coday was not a final decision-maker, Coday's discriminatory intent is only relevant to Jerge's remaining claim insofar as Jerge is able to demonstrate that Coday used his influence over the council to have Iles appointed instead of her because she is a woman. *See Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker."); *Long v. Eastfield Coll.,* 88 F.3d 300, 307 (5th Cir. 1996) (stating that if the official decisionmaker "merely 'rubber stamped'" the wishes of others, that decisionmaker would inherit the discriminatory taint). Here, Jerge presents sufficient evidence to create a material fact question as to whether the council generally rubber stamped Coday's decisions. However, it is less clear from the record that Coday disfavored Jerge as a candidate because she was a woman, as opposed to disfavoring her because he had a personality conflict with her. However, we need not resolve this question as other issues are dispositive of the appeal.

7

Finally, Jerge presents the testimony of Councilman Edwards in which he admits he was concerned about a woman being called out to work at night — one of the requirements of the job of City Manager. The following is an excerpt of Councilman Edwards' deposition:

> Question: [Other City employees] said that you said you were concerned about a woman being called out [at night to perform City Manager duties], that that wouldn't be a good idea.
>
> Edwards: Right.
>
> Question: That's what you said?
>
> Edwards: Right. I said that, probably. Because you know how it is now. You never know who you are going to run into at night. Dark carries a lot of things.[5]

Deposition of Pierce Edwards at 35.

Thus, Jerge provided sufficient direct evidence to raise a genuine issue of material fact regarding whether the City

---

[5]Although the district court observes that some of the statements offered by the councilmen "may be indicative of an antiquated view of women," it nonetheless concludes that these statements are not direct evidence of discrimination. However, these statements provide direct evidence that the councilmen's reliance on sex-role stereotypes played a role in their decision not to hire Jerge as City Manager. Therefore, the district court erred in finding that Jerge did not provide direct evidence of discrimination and in failing to employ the direct evidence burden allocation standard as opposed to the *McDonnell - Douglas* standard.

8

discriminated against her in violation of Title VII. Although the City presents evidence that the councilmen believed Iles to be better qualified, such evidence merely creates a triable issue of fact; it is insufficient to secure summary judgment under the direct evidence rubric. *Fabela*, 329 F.3d at 418. Consequently, we must remand this question for resolution by a jury.

### B. Jerge's Circumstantial Evidence

Because we find that Jerge has presented sufficient direct evidence, she is permitted to bypass the *McDonnell - Douglas* framework at trial. Even assuming that Jerge had presented only circumstantial evidence and that the *McDonnell - Douglas* framework applied, however, she would have raised a factual issue precluding summary judgment.

Jerge's circumstantial evidence is certainly sufficient to establish a *prima facie* case of gender discrimination under the *McDonnell - Douglas* burden-shifting framework.[6] Thus, the

---

[6]The district court found, and the City does not dispute, that Jerge established a *prima facie* case of discrimination, *i.e.*, (1) that she is a member of a protected class; (2) that she applied and was qualified for the position of City Manager; (3) that, despite her qualifications, she was not selected for the position; and (4) that the position subsequently remained open or was filled by a man. *Jerge v. City of Hemphill, Texas*, 224 F. Supp. 2d 1086, 1092 (E.D. Tex. 2002) (citing *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994)); *see also McDonnell Douglas Corp.*, 411 U.S. at 802.

evidentiary burden of production shifts to the defendant to proffer a legitimate and nondiscriminatory reason for the adverse employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Here, the City met this burden by providing evidence from the councilmen that they selected Iles over Jerge because they believed Iles was better qualified for the job. Specifically, the City asserts that Iles was better qualified because he has a college degree in finance.

Because the City demonstrated a nondiscriminatory reason for not selecting Jerge for the job, Jerge then has the opportunity to demonstrate that the City's proffered nondiscriminatory rationale was merely a pretext for discrimination. *Reeves*, 530 U.S. at 142.

Jerge presents both evidence which calls the City's reason for choosing Iles into doubt and affirmative evidence of discrimination. First, she points to the fact that the City Manager before Coday did not have a college degree, but instead had municipal experience. She notes that she was not asked anything about college courses, but was instead only questioned about her ability to be out late at night. She further points to deposition testimony of councilmen in which they admit they were not familiar with Iles' background in finance and statements by councilmen in which they attest that they did not deem a college degree to be an absolute requirement of the job. She also notes

10

that a woman who did possess a college degree and municipal finance experience applied for the job of City Manager, but was not hired, and at least one of the top three candidates did not have a college degree. She observes also that Iles had neither municipal experience nor administrative experience. Additionally, Jerge submits evidence that demonstrates that the Mayor and several of Jerge's colleagues believed her to be qualified for the job. Moreover, she had eight years of relevant experience, including three years during which she performed as acting City Manager without complaint.

Thus, Jerge presents evidence from which a jury could reasonably conclude that Iles' qualifications for the job were not the real reason that he was selected over Jerge.[7]

---

[7]The district court nonetheless concludes that no reasonable jury could find that the City's proffered reason was pretext. In reaching this conclusion, the district court impermissibly weighed the evidence in favor of the City. For example, the district court was "unwilling to discount the testimony of the councilmen that they were looking for a college degree." *Jerge*, 224 F. Supp. 2d at 1094. In ruling on a motion for summary judgment, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Similarly, the district court drew a negative inference against Jerge based on inferences that are unsubstantiated by the record. The district court reasoned that the fact that the City Manager prior to Coday did not have a college degree was not evidence of pretext because "the composition of the council has *probably* changed in the ensuing decade, as have, *perhaps*, its views on necessary qualifications to manage a changing city." *Jerge*, 224 F. Supp. 2d at 1094 (emphasis added). In ruling on the City's motion for summary judgment, however, the district court may not draw negative inferences, let alone inferences

11

## C.    Constructive Discharge

Jerge also alleged constructive discharge, and the district court granted summary judgment to the City on this point.  In light of the fact that the district court relied on the discrimination claim in determining that Jerge was not constructively discharged and, as we are vacating the judgment with respect to the discrimination claim, we also vacate the judgment dismissing the constructive discharge and remand for further consideration.

## III.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for trial on the merits and other proceedings consistent with the renderings herein.

VACATED and REMANDED

---

based on speculation, against a nonmoving party. *Fabela*, 329 F.3d at 418 n.9.